UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FINIS LEWIS | ) | |
| | ) | |
| v. | ) | No. 3:12-0522 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

MEMORANDUM

I. Introduction

Pending before the Court are a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Docket No. 1), and Memorandum In Support (Docket No. 2), filed by the Movant/Petitioner (hereinafter "Petitioner"), pro se. The Government has filed a Response (Docket No. 12) to the Motion.

For the reasons set forth below, the Court concludes that Petitioner's Motion To Vacate (Docket No. 1) is DENIED, and this action is DISMISSED.

II. Procedural and Factual Background

In the underlying criminal case, the Petitioner was charged with being a convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924; and with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). (Superseding Indictment (Docket No. 29 in Case No. 3:11-00137)). Quinten Smith and Corey Lynn Smith were also named as Defendants. (Id.) Petitioner pled guilty to the charges pursuant to a Plea Agreement based on Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure in which the parties agreed to a total sentence of 80 months of imprisonment. (Docket Nos. 82, 83, 93 in Case No. 3:11-00137). At the subsequent sentencing

hearing, the Court calculated the Petitioner's Sentencing Guideline Range to be 121-151 months, but sentenced the Petitioner to the 80-month term to which the parties had agreed. (Docket Nos. 102, 103 in Case No. 3:11-00137).

III. Analysis

A. The Petitioner's Claims

Petitioner contends that his conviction should be vacated because he received the ineffective assistance of counsel.

B. The Section 2255 Remedy/Evidentiary Hearing Not Required.

Section 2255 provides federal prisoners with a statutory mechanism by which to seek to have their sentence vacated, set aside or corrected.[1] The statute does not provide a remedy, however, for every error that may have been made in the proceedings leading to conviction. The statute contemplates constitutional errors, and violations of federal law when the error qualifies as a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Faley, 512 U.S. 339, 114 S.Ct. 2291, 2296, 2299-2300, 129 L.Ed.2d 277 (1994); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that the Court shall

---

[1] 28 U.S.C. § 2255 states, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

consider the "files, records, transcripts, and correspondence relating to the judgment under attack" in ruling on a petition or motion filed under Section 2255. In addition, where the same judge considering the Section 2255 motion also presided over the underlying criminal proceedings, the judge may rely on his own recollection of those proceedings. Blackledge v. Allison, 431 U.S. 63, 97 S.Ct. 1621, 1629 n.4, 52 L.Ed.2d 136 (1977); Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

An evidentiary hearing is not required if the record conclusively shows that the Petitioner is not entitled to relief. 28 U.S.C. § 2255; Rule 8 of the Rules Governing Section 2255 Proceedings For The United States District Courts; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). No hearing is required "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" Id. (quoting Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)).

The Court has reviewed the files, records, transcripts and correspondence filed in Petitioner's underlying criminal case, as well as the pleadings, briefs, and records filed by the parties in this case. The Court finds it unnecessary to hold an evidentiary hearing because these records conclusively establish that Petitioner is not entitled to relief on the issues raised.

C. Ineffective Assistance of Counsel

Petitioner argues that he received the ineffective assistance of trial counsel because counsel failed to advise him of his right to assert a justification defense. Consequently, the Petitioner contends, his guilty plea was not entered knowingly and voluntarily.

In order to prevail on an ineffective assistance of counsel claim, the burden is on the Petitioner to show: (1) trial counsel's performance was not within the range of competence

3

demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011); Campbell v. United States, 364 F.3d 727, 730 (6th Cir. 2004).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland, 104 S.Ct. at 2052; Ludwig v. United States, 162 F.3d 456, 458 (6th Cir. 1998). In analyzing trial counsel's performance, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id., at 2065.

In order to show actual prejudice in the guilty plea context, the Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 47 U.S. 52, 106 S.Ct. 366, 369-70, 88 L.Ed.2d 203 (1985); Lafler v. Cooper, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed. 2d 398 (2012); Missouri v. Frye, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2052.

As discussed above, the Petitioner was charged in Count One with being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924; in Count Two with being a convicted felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924; and in Count Three with possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B). (Superseding Indictment (Docket No. 29 in

Case No. 3:11-00137)). The firearm identified in Counts One and Three was a Rossi Interarms M971 .357 caliber revolver. (Id.) The ammunition identified in Count Two was Federal .38 special and Blazer magnum ammunition. (Id.)

In order to sustain a conviction for the felon in possession of a firearm and ammunition charges, the Government is required to show: (1) the defendant had a previous felony conviction; (2) the defendant knowingly possessed the firearm specified in the indictment; and (3) the firearm traveled in or affected interstate commerce. See, e.g., United States v. Morrison, 594 F.3d 543, 544 (6th Cir. 2010). In order to sustain a conviction for the charge of possession of a firearm with an obliterated serial number, the Government is required to show: (1) the defendant knowingly possessed a firearm; (2) which had its serial number altered, removed or obliterated; and (3) had been shipped, received or transported in interstate commerce. United States v. Cobbs, 233 Fed. Appx. 524, 536 (6th Cir. May 25, 2007). The Government must also prove that the defendant knew the firearm he possessed had an obliterated serial number. Id.

The Sixth Circuit has held that the justification defense arises "only in 'rare situations' and 'should be construed very narrowly.'" United States v. Kemp, 546 F.3d 759, 765 (6th Cir. 2008) (quoting United States v. Singleton, 902 F.3d 471, 472 (6th Cir. 1990)). To be entitled to an instruction on the defense, a defendant must make a prima facie showing of each of the following elements:

> (1) The defendant reasonably believed there was a present, imminent, and impending threat of death or serious bodily injury to another;
>
> (2) The defendant had not recklessly or negligently placed another in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) The defendant had no reasonable, legal alternative to violating the law;

5

(4) The defendant reasonably believed his criminal conduct would avoid the threatened harm; and

(5) The defendant did not maintain the illegal conduct any longer than absolutely necessary.

(Sixth Circuit Pattern Jury Instruction 6.07). See also United States v. Kemp, 546 F.3d at 765; United States v. Ridner, 512 F.3d 846, 849, 850 (6th Cir. 2008). The instruction is properly given only "if the defendant produces evidence upon which a reasonable jury could conclude by a preponderance of the evidence" that each of these factors has been met. Kemp, 546 F.3d at 765.

The factual basis section of Petitioner's Plea Agreement provides, in part, as follows:

> a. On July 11, 2011, at approximately 2:45 p.m., a shooting occurred on Albion Street, Nashville, Tennessee across from Hadley Park. Investigators determined that over 100 rounds were fired from at least five separate caliber firearms during the incident. As a result of the shooting, one person [Clarence Claybrooks a/k/a Lil Bo] was killed and one [defendant Corey Smith] was critically injured. The deceased, who was wearing gloves, had an AK-47 rifle at his feet. Other occupied homes as well as an occupied vehicle which was not involved in the dispute between the defendants charged in this case and Claybrooks and Claybrooks' unidentified associates were hit by gunfire from the defendants charged in this case.
>
> b. Just before this gun battle, Finis Lewis, Quinten Smith, and Corey Smith were in the area of Finis Lewis' sister's home, which was a few blocks from the area of Hadley Park, and each of them were armed with loaded firearms, which they had on them or in the silver Impala which they used to travel to that location. That silver Impala had been rented by Finis Lewis' girlfriend, Kisha Pollard, on July 10, 2011. Finis Lewis went into his sister's home to visit the residents, while Quinten Smith and Corey Smith remained outside near that Impala. When Finis Lewis came back outside, several gunshots were heard in the area but none hit any of the defendants, their car, or Finis Lewis' sister's house. Finis Lewis told his relatives that he was not being shot at, and walked up the street towards the area where the gunfire appeared to originate. Quinten Smith and Corey Smith remained near the Impala with their firearms. Finis Lewis then came back to the Impala, and drove it away, with Quinten Smith as his front seat passenger and Corey Smith as the rear passenger. None of these three men nor any of the residents in Finis Lewis'sister's home called police to report gunfire or that any of them were afraid of being shot.

6

c. Shortly after leaving his sister's house, Finis Lewis and the same passengers turned onto Albion Street, which runs parallel to Hadley Park. They were still in the Impala. They drove down Albion Street, and then abruptly stopped. Each of them got out of the Impala and all of them eventually fired their weapons.

1. At this point, Finis Lewis possessed and fired a Rossi Interarms M971 .357 caliber revolver which had previously been shipped and transported in interstate commerce. This revolver was loaded with Federal .38 special and Blazer .357 magnum ammunition. This revolver had an obliterated serial number in the visible exterior area of the revolver, and Lewis knew that serial number had been obliterated while he possessed the firearm.

(Docket No. 83, at 4-5).

At the guilty plea hearing, the Petitioner objected to certain facts set forth in the Plea Agreement. The Petitioner stated that when he came out of his sister's house, he felt the shots were towards him, and that neither he nor the Co-Defendants had their weapons drawn at that time. (Docket No. 93, at 5-6.). The Petitioner stated that he told his relatives that he was not being shot at because they were scared, but in reality, he knew he was being shot at. (Id., at 6). The other facts disputed by the Petitioner involved events that occurred later. (Id., at 3-5).

In his brief, the Petitioner contends that he possessed the firearm in self defense, and that he armed himself after he first heard gun shots erupt at his sister's residence with a firearm that was kept at his sister's residence. (Docket No. 2, at p. 6-8). Petitioner states that "The ambush occurred later after Petitioner was able to arm himself and believed it was safe to leave Clifton Avenue [the residence of Petitioner's sister]." (Id., at 7).

Assuming the facts set forth in the Plea Agreement that Petitioner did not dispute at the guilty plea hearing, and the facts the Petitioner now alleges in his brief, the Court concludes that the assertion of a justification defense would not have been successful if presented to a jury at

7

trial. Upon first hearing the gunfire outside his sister's home, the Petitioner had a reasonable, legal alternative to violating the law by arming himself with the firearm and ammunition. He could have stayed at that location, rather than traveling to the location of the gun battle, and he could have called the police to report the gunfire. Petitioner admits to possessing the firearm and ammunition *before* traveling to the location of the gun battle. Under these circumstances, the justification defense would not apply, and the Petitioner was not prejudiced by any failure of counsel to go to trial and assert such a defense.[2] See, e.g., Ludwig v. United States, 162 F.3d at 458 (Counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

The Court notes that trial counsel negotiated a plea agreement for the Petitioner in which the Government agreed to a sentence of 80 months of imprisonment when the advisory guideline range calculated by the Court at sentencing was 121 to 151 months. Petitioner has not shown that he received the ineffective assistance of trial counsel. To the contrary, counsel for the Petitioner was very effective in obtaining a very generous plea agreement given the relevant conduct.

## IV. Conclusion

For the reasons set forth herein, the Court concludes that Petitioner is not entitled to relief

---

[2] The Government has filed an affidavit of defense counsel, David I. Komisar, in which counsel states that he and counsel for the co-defendants thoroughly researched and discussed application of the justification defense, and that he had lengthy discussions with the Petitioner about the defense. (Docket No. 12-1). Mr. Komisar opines that such a defense would not have been successful at trial, and that without the plea agreement, Petitioner likely would receive a substantially higher sentence. (Id.) The Court finds it unnecessary to rely on the affidavit, however, in reaching its determination that assertion of the justification defense would not have been successful.

under 28 U.S.C. § 2255. Therefore, the Petitioner's Motion Under § 2255 is denied, and this action is dismissed.

Should the Petitioner give timely notice of an appeal from this Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. <u>Castro v. United States</u>, 310 F.3d 900 (6th Cir. 2002).

It is so ORDERED.

                                            TODD J. CAMPBELL
                                            UNITED STATES DISTRICT JUDGE